In the matter of the estate of EUGENIE DEBUCK, deceased.

[Decided February 6th, 1939.]

On appeal from a decree of the prerogative court in which Vice-Ordinary Fielder filed the following opinion:

"Eugenie R. deBuck died May 30th, 1933, a resident of Secaucus, Hudson county. Testimony taken on this appeal and recitals in the petitions and orders hereinafter mentioned,

demonstrate beyond doubt that she had been domiciled and living with her husband, John deBuck, in Secaucus continuously for twenty years prior to her death and that she had been a naturalized citizen of the United States nearly eight years; also that at her death she owned no property of any description outside of this state. She left a will dated December 21st, 1915, admitted to probate by the surrogate of Hudson county September 29th, 1933, whereby she gave her entire estate to her husband and named him as sole executor. He died February 24th, 1935, intestate, still a resident of Secaucus, leaving his sister Marie deLeyer, a resident of Indiana, as his sole heir and next of kin. She renounced her right of administration on his estate and letters were granted March 22d, 1935, to Louise Bailey by the surrogate of Hudson county.

"In September, 1936, a petition addressed to said surrogate, was filed by Joseph F. Deegan, as attorney in fact and in law of Pierre C. Rampillion of Nice, France, alleging that said Rampillion on or about January 1st, 1936, had found in his possession a will of Mrs. deBuck, dated September 6th, 1919. executed in France, a copy of which was annexed to said petition and from which it appears that Mrs. deBuck thereby gave her entire estate to her sister Marie or, in case of her sister's death, to her brother, said Rampillion. The petition further alleges that Rampillion immediately consulted an American attorney in France and upon his advice had the will certified and forwarded to the petitioner; that by said will the entire estate of testatrix passed to Rampillion (the sister Marie apparently having died); that Rampillion had received no notice of proceedings in connection with the estates of either Mr. or Mrs. deBuck and, not knowing of the existence of the 1919 will of Mrs. deBuck, did not appear in the proceedings in connection with her estate. The petition prays an order or citation directed to Louise Bailey administratrix and Marie deLeyer, directing them to show cause why the letters testamentary issued on Mrs. deBuck's estate should not be set aside and the order admitting her will to probate should not be vacated and why the will of 1919 should not be

admitted to probate. An order to show cause was granted by the surrogate which, by his order entered November 6th, 1936, he dismissed without prejudice. In the meantime and on October 23d, 1936, a caveat had been filed by appellants here with said surrogate against admitting said will, or a copy thereof, to probate. November 30th, 1936, said Joseph F. Deegan, as attorney in fact for Rampillion, filed a second petition addressed to said surrogate, applying for probate of an exemplified copy of the 1919 will, which will, the petition stated, was probated or filed in Nice, France, August 7th, 1936. Citation on this petition was issued out of the Hudson orphans court, directed to the petitioner, to Rampillion, the two witnesses to the 1919 will, Marie deLeyer and Louise Bailey administratrix, directing them to show cause why that will should not be admitted to probate. The matter came on for hearing before a judge of said orphans court and apparently no testimony or other evidence was offered before said court, because none appears in the transcript of record on appeal. June 25th, 1937, said judge filed an opinion wherein he stated that the testatrix was, at the time of her death, domiciled in this state, a citizen of the United States, and left no property in France and that because the original will is in custody of a notary in France and by the laws of that country is required to remain in his custody and cannot be produced here, a commission should issue to take testimony concerning the execution and contents of the alleged will. The petitioner then presented a third petition, addressed to the orphans court, praying that a commission issue to take depositions of witnesses in France in connection with the execution of said will and that said will be admitted to probate by a copy thereof, certified by said notary.

"June 30th, 1937, the orphans court entered two orders, the first directing that the petition for probate of the 1919 will be held until after the return of the commission to take testimony in France of the notary and witnesses to said will, and the second ordering that such commission take testimony for the purpose of proving the execution and validity of the will. A commission issued accordingly. The appeal before me is from the entry of those two orders.

"Pending a hearing on the appeal, an order was entered by this court September 16th, 1937, reciting the orphans court order for a commission and that it appeared that since the appeal therefrom, one of the witnesses to the 1919 will had died and that the other was eighty-three years of age and ordering that under such commission the testimony of witnesses still living and named in the commission, be taken. Testimony of the living witness to the execution of the alleged will was taken and also the testimony of the notary, of Rampillion and another witness and that testimony has been returned to this court certified by the commissioner. In deciding this appeal I give no consideration to such testimony because it was not before the orphans court when it entered the two orders from which the appeal was taken and therefore can have no bearing on the validity of those orders.

"The filing of the caveat against probate of the 1919 will or any copy thereof, suspended the act of probate until an investigation of the validity of the instrument might be had before the orphans court. *Comp. Stat. p. 3817 § 14 (R. S. 3:2-23)* requires that application for the probate of a will of a person resident within this state at the time of his decease and for letters testamentary thereon, shall be made to the surrogate of the county in which the decedent resided at the time of his death, and although there is nothing in the statute or in our rules requiring production of the will with the petition for probate, orderly procedure and our common practice call for its production before it can be admitted to probate. *In re Barney, 94 N. J. Eq. 392.* This was the state of our law when Rampillion alleges he found the 1919 will in his possession in January, 1936, and when he says he sought legal advice with respect thereto. After receiving advice he retained the will in his possession until the following August, when he filed it with a notary in France. Evidently he was under no compulsion to so file it and so far as the record discloses there was nothing before the orphans court, other than as stated in a petition presented to the surrogate, that a will of one who was not a citizen or resident of France and owned no property of any description in that country, could not be taken from the notary's files and sent for probate to the country of the decedent's domicile.

"Prior to the enactment of *P. L. 1921 ch. 283* (*R. S. 3:2-41*) our courts had no jurisdiction to entertain a proceeding for the probate of a will of a decedent domiciled in a foreign state, notwithstanding that he owned property in this state. Under said act of 1921, our courts have original jurisdiction to admit a will of a non-resident to probate, only when the testator is seized of real estate in this state and no application for probate has been made elsewhere. Without proof that the laws of France in this respect are different from ours, I cannot conceive that the will of a citizen and resident of this state who died here owning no property whatever in France, could be admitted to probate in France, or that the courts of that republic could take any action thereon, and I find nothing in the record to convince me that the will cannot be taken from the files of the French notary and produced here for probate.

"The only decision of which I am aware in this state bearing on the question of probating a copy of a will of a resident of this state where the original will is on file with or in the custody of an official in a foreign country, is *In re Fair, 111 N. J. Eq. 330*. That was an uncontested application presented to our prerogative court to probate a will of a resident of this state, executed in Cuba 'in the manner prescribed by the laws of Cuba,' as well as in accordance with the laws of this state. The short opinion merely states that since the law of Cuba requires the original will to remain there, a copy thereof could be admitted to probate here, in analogy to cases allowing probate of lost wills, on due proof. The opinion does not disclose the circumstances under which the law of Cuba required the will to remain there, although it seems evident that proof of such law was made to the satisfaction of the court. (Perhaps the testator owned real or personal property in Cuba and for that reason the will was probated there.) Or perhaps the law of Cuba required that the execution of the will should be witnessed by a Cuban official and be filed forthwith with such official. In any event, before the rule with regard to admitting lost wills to probate is appealed to, for the purpose of admitting to probate a will which is not lost and thus overruling the statute

which requires the production of an existing will before the probate judge, it should be made to appear by most satisfactory proof that it is impossible to produce the 'lost' will. Especially is this so in the instant case, where the circumstances surrounding the execution and discovery of the 1919 will are so peculiar as to make it of the utmost importance that the caveators should have full opportunity to contest its validity, as well as execution, before our orphans court.

"We have a statute (*P. L. 1935 ch. 124; R. S. 3:2-46, 47*) providing that where the will of a resident decedent has been admitted to probate in another state or country, under the laws of which it cannot be removed therefrom, it may be admitted to probate here upon production of a duly authenticated photostatic copy, but that statute is not applicable here because the will in question has not been probated in France and we have not even the benefit of a photostatic copy to use for comparison of signature on the alleged will, by persons in this country who know or are familiar with decedent's genuine signature.

"If the will really cannot be produced here, that condition was created by Rampillion, who could have produced it but chose to deposit it in a place from which the petition of his attorney says he cannot secure its return. In any event, the orphans court, acting upon the petition for probate of a copy of the will, before entering its orders directing that a commission issue to take testimony in France as to the execution and validity of the will, should have required strict proof of any French law which prevents the production of the original will here instead of relying upon a mere allegation in a petition.

"I have said that circumstances concerning the alleged will are peculiar; in fact, I might say they are suspicious. Here we have the will of a woman which, if executed in France, was executed while she was there on a visit, for she had resided at her home in Secaucus with her husband, at least six years before the date of the will and she continued to live with him in the same home until she died, fourteen years thereafter, and by that will she is supposed to have disinherited her husband absolutely. The petition for pro-

bate filed September, 1936, states that Rampillion found that will among his papers, January 1st, 1936, when he was preparing to remove his belonging to a new residence. The date of discovery is two and a half years after decedent's death and nearly a year after the death of her husband. The will had come to Rampillion's possession some time prior to the date he says he found it, but the petition fails to state where it had been since its execution; however, the fair inference is that it came to his hands immediately after execution. He must have known of his sister's death shortly after it occurred and the question naturally arises, why he did not recall his possession of the will and produce it immediately thereafter, while Mr. deBuck was alive. The record coming up on appeal contains a copy of the power of attorney executed by Rampillion in favor of the petitioner Deegan. It is dated June 11th, 1935, and its phrasing strongly indicates that the will in question had been 'found' prior to the date of the power and not seven months subsequent thereto. For instance, it recites that Rampillion is the sole heir-at-law, devisee and legatee of Mrs. deBuck, and it appoints Deegan attorney to represent Rampillion in all matters connected with her estate and in and about all property that may be awarded to Rampillion from said estate, as her legatee or devisee. It provides for compensation to said attorney, contingent on his success and says that in the event of no recovery in contemplated actions against the estates of Mr. and Mrs. deBuck, Rampillion shall not be called upon for funds. Not only does the wording of the power of attorney indicate that Rampillion is about to make claim under a newly discovered will, but it reflects his doubt as to the validity of his claim. If the will was 'found' prior to June 11th, 1935, why did Rampillion not send the will to his attorney with the power or why, if it was necessary under the law of France to file the will with a notary, did he delay more than a year before doing so? The petition of September, 1936, states that as soon as Rampillion had received advice from his American attorney in France, he had the will certified and forwarded to Deegan for the purpose of instituting proceedings thereunder and that petition says nothing about the will having already been filed with

a notary or about inability to produce it here for probate. On the contrary, the petition prays for probate of the will itself and nothing is said about probating a copy. It is not until the petition of November, 1936, that the statement is made of filing the will with a notary and prayer for probate of a copy is made. Annexed to the petition of September, 1936, is a copy of the will, accompanied by a statement of a French notary certifying that the copy is the same as the original will of Mrs. deBuck, 'wife of John deBuck, horticulturist, with whom she lived at Villafranche, Maison Anus, and died in Secaucus, State of New Jersey, United States of America, where she found herself momentarily, the 30th day of May, 1933.' That certificate must have been based on false information given by Rampillion to the notary to induce the latter to accept the will for filing and possible probate, and it seems that had Rampillion informed the notary of the true facts, the notary would not have accepted the will and that had Rampillion given proper information to the American attorney whom he had consulted, that attorney would have advised him to send the will to this country for probate.

"I conclude that the orders of the orphans court from which appeal has been taken, should be set aside and that before proceeding further in the matter of the probate of the 1919 will of decedent, that court should require the production of the original will before it. If it is produced and it is found necessary to take testimony out of this country to prove its due execution, or to take other testimony of foreign witnesses on behalf of the caveators or proponents, then a commission may issue pursuant to the rules and practice of the orphans court. If the will is not produced, the petition for probate should be denied because the failure to produce is due to the deliberate and unnecessary act of the only person who could benefit by probate."

*Messrs. Armstrong & Mullen,* for the appellants, Joseph Deegan, as attorney and agent in fact, and in law, for Pierre C. Rampillion and Jeanne Plance.

*Mr. Harry W. Lange,* for the respondents, Marie De Leyer, Louise Bailey, administratrix, &c., and American Surety Co.

Per Curiam.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the prerogative court by Vice-Ordinary Fielder.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Hetfield, Dear, Wells, WolfsKeil, Walker, JJ. 14.

*For reversal*—None.

In the matter of the appeal from the decree of the orphans court of Bergen county removing Johanna Schmitt Schimmel, appellant, as co-executrix of the last will and testament of Rose M. Roeben, deceased.

[Submitted October 18th, 1938.   Decided February 6th, 1939.]

*Messrs. Sarnow & Asarnow (Mr. H. Kermit Green,* of counsel), for the appellant.

*Mr. Clyde Christie,* for the respondent.

The opinion of the court was delivered by

Trenchard, J.

This is the appeal of Johanna Schmitt Schimmel from the